NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ERIC ALBERT WATSON, *Plaintiff/Appellant,*

*v.*

ROY PECK and MICHAEL BOATMAN, *Defendants/Appellees.*

No. 1 CA-CV 21-0691
FILED 12-29-2022

Appeal from the Superior Court in Mohave County
No. S8015CV201901124
The Honorable Kenneth Gregory, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Eric Albert Watson, Graham, WA
*Plaintiff/Appellant*

The Mullan Law Firm, PC, Bullhead City, AZ
By Anthony Joseph Mullan, Jr.
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann[1] joined.

---

[1] Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective November 28,

**P A T O N**, Judge:

**¶1**       Eric Albert Watson appeals a superior court order enforcing a settlement agreement.  We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**       In 2013, Eric Watson entered into an installment contract with Roy Peck and Michael Boatman to sell them real property.  A years-long series of disputes arose between Watson and the purchasers over the interpretation and performance of the contract that culminated in Watson suing the purchasers, who counterclaimed.

**¶3**       The superior court convened a settlement conference in May 2021 as part of that litigation.  *See* Ariz. R. Civ. P. 16.1 (governing settlement conferences).  Both Watson and the purchasers were present with their attorneys by video.  During the conference, the parties agreed to settle their claims: the purchasers would pay a sum of money to Watson within thirty days in return for a warranty deed conveying the disputed property to them, and the parties would each bear their own attorneys' fees and costs.  The parties orally stipulated to the settlement agreement through their attorneys on the record, and Watson himself orally agreed to accept the purchasers' proposed payment timeframe.  The court recited the settlement agreement terms on the record and memorialized them in a minute entry.

**¶4**       In late July 2021, after multiple unsuccessful attempts to pay Watson in accordance with the settlement agreement, the purchasers moved for leave to deposit their payment in trust with the superior court and asked the court to complete a warranty deed effectuating transfer of the property.  Approximately one month later, Watson asked the court to schedule a status conference or jury trial.  The superior court held a status conference later that month and filed a minute entry noting that Watson denied having an agreement from the settlement conference and taking the issue under advisement pending a review of the record.

---

2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2022-162.

**¶5** The court later entered an order noting that at the previous status conference, "[Watson] argued there was not a settlement, but then he admitted that he had agreed to the settlement but afterwards changed his mind." The court found that the settlement agreement audio recording reflected the agreement was entered into the court's record. In the remainder of its order, the court recited the agreement's terms, concluded that the agreement bound the parties, and ordered that its terms be fulfilled. Watson filed a motion for reconsideration, which the court denied.

**¶6** The superior court then issued a final order for the enforcement of the settlement. Watson timely appealed the order, and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-2101 and -120.21.

## DISCUSSION

**¶7** Watson argues the settlement agreement was not binding for various reasons, including that it was not signed in writing and he entered into it under duress. Because the superior court's order "effectively granted summary judgment regarding the . . . enforceability of the settlement agreement, we employ the summary judgment standard of review." *Robertson v. Alling*, 237 Ariz. 345, 347, ¶ 8 (2015). "Accordingly, we determine de novo whether any genuine disputes of material fact exist and whether the [superior] court correctly applied the law, viewing the facts in the light most favorable to [Watson] as the non-prevailing party." *Id.* at 347, ¶ 8.

**¶8** Watson's opening brief does not comply with the requirements of Rule 13 of the Arizona Rules of Civil Appellate Procedure ("ARCAP"). His failure to support his arguments with "adequate explanation, citations to the record, or authority" is sufficient to consider those arguments waived. *See In re Aubuchon*, 233 Ariz. 62, 64–65, ¶ 6 (2013). We recognize that self-representing clients are not entitled to any special consideration, *Smith v. Rabb*, 95 Ariz. 49, 53 (1963); however, in our discretion we address the merits of Watson's lack-of-writing and duress arguments. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984) (recognizing a preference for deciding on merits over summarily dismissing on procedural grounds).

## I. The oral settlement agreement is enforceable as a stipulation that conforms with Arizona Rule of Civil Procedure 80(a).

**¶9** Watson argues the settlement agreement is not enforceable because it was not memorialized in a signed writing. Arizona's statute of

3

frauds provides in part that, "[n]o action [for the sale of real property or an interest therein] shall be brought in any court . . . unless the . . . agreement upon which the action is brought[] . . . is in writing and signed by the party to be charged." A.R.S. § 44-101(6). Although the settlement agreement involves the transfer of real property, it is not the agreement on which the original action was brought, for which the statute of frauds could be raised as a defense. *See id.* Rather, the settlement agreement is a stipulation between the parties made in open court and outside the scope of the statute of frauds. "A stipulation is an agreement, admission[,] or other concession made in a judicial proceeding by the parties or their attorneys." 83 C.J.S *Stipulations* § 1 (2022); *accord Rutledge v. Ariz. Bd. of Regents*, 147 Ariz. 534, 549 (App. 1985). Parties are bound by their stipulations unless relieved from them by the trial court in its discretion. *Lewis v. N.J. Riebe Enters., Inc.*, 170 Ariz. 384, 395 (1992).

¶10        The purchasers correctly argue the stipulated settlement agreement meets a condition for enforceability required by Rule 80(a)[2] of the Arizona Rules of Civil Procedure: "If disputed, no agreement . . . between the parties . . . is binding[] unless[] . . . it is made orally in open court and entered in the minutes." Watson and the purchasers entered into the settlement agreement orally in open court, and the court both recited the agreement on the record and memorialized it in a minute entry. The settlement agreement bound Watson and the purchasers as a joint stipulation because they made and entered into it during a judicial proceeding, and they did so in conformance with Rule 80(a). The superior court, therefore, did not err as a matter of law by determining that the settlement agreement was enforceable as a stipulation outside the statute of frauds.

**II.        The superior court did not err by refusing to relieve Watson from the settlement agreement stipulation because the record indicates Watson was not under duress during the settlement conference.**

¶11        Watson also alleges that the settlement agreement is unenforceable because he was under duress during the settlement conference. A court may in its discretion relieve a party from a stipulation under certain conditions. *Rutledge*, 147 Ariz. at 550. Courts consider claims of duress when determining the enforceability of stipulations. *See Republic Nat'l Life Ins. Co. v. Rudine*, 137 Ariz. 62, 64–67 (App. 1983) (concluding that

---

[2] The answering brief cites to Rule 80(d), but from context we understand it to be referring to the current Rule 80(a) adopted in 2017, which renumbers and restyles but does not alter the substance of the previous Rule 80(d).

the settlement stipulation at issue withstood a claim of duress); *Harsh Bldg. Co. v. Bialac*, 22 Ariz.App. 591, 594 (1975) (refusing to enforce a stipulation as a contract because of a finding that appellees consented to the stipulation under duress). Although the superior court did not expressly address Watson's duress claim, we can infer from the record that it reasonably concluded Watson was not subject to duress. *See Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 11 (App. 1998).

¶12 Watson alleges that during the settlement conference his attorney created a hostile, threatening, and confusing environment that caused Watson to involuntarily assent to the stipulated settlement agreement. In addition to alleging unspecified "odd" behavior by his attorney, Watson points to the presence of the attorney's dog in the room, the attorney being armed with a holstered pistol, and the attorney passing him notes while Watson was speaking during the settlement conference — including one stating "TAKE IT PROFIT." We find no evidence from the record that Watson was subject to threat or coercion during the settlement conference. The record indicates Watson did not enter the settlement agreement under duress.

**III. We award the purchasers their reasonable attorneys' fees and costs on appeal.**

¶13 We grant Appellees' request for reasonable attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 and award them costs on appeal after compliance with ARCAP 21.

**CONCLUSION**

¶14 We affirm.

